CAVANAGH, J.
(concurring in part and dissenting in part). I concur in full with parts I through IV and parts V(A) and (B) of the majority opinion. I write separately to further clarify my view regarding the proper interpretation of 25 USC 1912(d) and to dissent from the majority’s application of that statute in this case in part V(C). I further dissent from the majority’s application of 25 USC 1912(f) in part VI. I would reverse the judgment of the Court of Appeals, vacate the order terminating respondent’s parental rights to JL, and remand this case to the trial court for further proceedings.
I. “ACTIVE EFFORTS” AND 25 USC 1912(d)
Under 25 USC 1912(d), the party seeking to terminate parental rights must satisfy the court, by clear and convincing evidence, that “active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.” This Court asked the parties to address whether, in order to satisfy the statute, “active efforts” must be concurrent with the *337 instant proceeding and whether the efforts must be targeted at the child who is the subject of the proceeding.[1]
I fully concur with the majority’s holding that the relevant inquiry for both of these issues is “whether the efforts made and the services provided ... are relevant to the parent’s current situation and abilities so that they permit a current assessment of parental fitness as it pertains to the child who is the subject of the current proceeding.” Ante at 325.1 further agree that, although the text of 25 USC 1912(d) does not strictly require that efforts be made concurrently with the proceedings or be directed at the child who is the subject of the proceeding, the timing and the subject of the efforts are still relevant aspects in determining whether the requirements of 25 USC 1912(d) and (f) are met. Ante at 324. As stated by the majority, “[s]ervices provided too long ago to be relevant to a parent’s current circumstances do not establish by clear and convincing evidence that ‘active efforts’ have been made ....” Ante at 324-325. Similarly, services presented in connection with one child will not always be relevant in determining a parent’s abilities to care for a different child. I also concur with the majority’s explanation of the qualitative requirements associated with providing active, as opposed to passive, efforts and its rejection of a “futility exception” to the “active efforts” requirement. Ante at 321-324, 326-327.
Although I agree with the majority’s articulation of what 25 USC 1912(d) requires, I dissent from its application of 25 USC 1912(d) here because I would hold that, in order to meet this standard, the party seeking termination must present evidence of the par *338 ent’s current circumstances and ability to parent the child who is the subject of the proceeding.[2]1 would also hold that the party must assess and provide evidence of the relevancy of past efforts to the family’s current circumstances and needs. Absent such evidence, I do not see how the party seeking termination could clearly and convincingly show that, as required by the majority, past efforts to prevent the breakup of the family “are relevant to the parent’s current situation and abilities” and are sufficient to “permit a current assessment of parental fitness as it pertains to the child who is the subject of the current proceeding.” Ante at 325.
In this case, the party seeking termination, the Department of Human Services (DHS), did not present evidence regarding respondent’s current circumstances and did not assess the relevancy of its past efforts to respondent’s current circumstances. As summarized by the majority opinion, the DHS did present ample evidence that there had been extensive past efforts by the DHS, and the tribe, that were designed to prevent the breakup of the family and evidence that those efforts had been largely unsuccessful. Ante at 328-331. The DHS did not, however, present evidence regarding whether these past efforts were relevant to respondent’s and JL’s current circumstances. The caseworkers who testified at trial admitted that, for a year and a half or longer before the termination proceeding, they had not observed or evaluated respondent, respondent’s home situation, respondent’s parenting ability, or respondent’s interactions with JL.[3] Given that the DHS *339 did not evaluate respondent’s current circumstances or current ability to parent JL, the agency also could not have evaluated whether the past efforts of the DHS and the tribe were relevant to her “current” circumstances and abilities, as the majority purports to require.[4]
Accordingly, in light of the DHS’s failure to assess the relevancy of past services to respondent’s current circumstances or ability to parent JL, I dissent from the majority’s result. I would hold that it is not possible to determine whether the agencies’ past efforts “are relevant to the parent’s current situation and abilities” such that they are sufficient to “permit a current assessment of parental fitness” using the evidence presented by the DHS in this case.[5]
*340 II. "BEYOND A REASONABLE DOUBT” AND 25 USC 1912(f)
A parent’s rights may not be terminated “in the absence of a determination, supported by evidence beyond a reasonable doubt, . . . that the continued custody of the child by the parent... is likely to result in serious emotional or physical damage to the child.” 25 USC 1912(f). The burden of proof is on the party seeking termination. MCR 3.977(A)(1) and (3). I respectfully dissent from the majority’s determination that the DHS met this very high standard here.
I would hold that contemporaneous evidence must be presented in order for a court to determine beyond a reasonable doubt that “serious emotional or physical damage to the child” is likely to result, as required by 25 USC 1912(f).[6] This holding is supported by the standards set forth in that statute and the Bureau of Indian Affairs’ guidelines for state courts.
Under 25 USC 1912(f), there are stringent requirements that must be met before a parent’s rights may be terminated under the Indian Child Welfare Act (ICWA). To begin with, it adopted the “beyond a reasonable doubt” standard. It is well established that the “beyond *341 a reasonable doubt” standard is the highest that may be imposed by a legislature. As stated by the United States Supreme Court, “Congress requires ‘evidence beyond a reasonable doubt’ for termination of Indian parental rights, reasoning that ‘the removal of a child from the parents is a penalty as great [as], if not greater, than a criminal penalty Santosky v Kramer, 455 US 745, 769; 102 S Ct 1388; 71 L Ed 2d 599 (1982), quoting HR Rep No 95-1386, at 22 (1978). This is significant because it demonstrates that the “stringency of the ‘beyond a reasonable doubt’ standard bespeaks the ‘weight and gravity’ of the private interest affected, society’s interest in avoiding erroneous convictions, and a judgment that those interests together require that ‘society impos[e] almost the entire risk of error upon itself.’ ” Santosky, 455 US at 755 (internal citations omitted). Congress deliberately used the “beyond a reasonable doubt” standard in 25 USC 1912(f) as a reflection of the weight and gravity of the interest that is at stake. To hold that the standard could be met absent contemporaneous evidence would afford inadequate respect to this determination.
Further, the statute sets the high standard that the party seeking termination must present evidence that a parent’s continued custody of the child is “likely to result in serious emotional or physical damage to the child.” I would hold that under 25 USC 1912(f), consistently with the purposes of ICWA and the “beyond a reasonable doubt” standard, a determination that serious emotional or physical damage to the child is likely to result requires current, specific evidence. This evidence should be relevant to the child who is the subject of the proceeding and the circumstances that will cause the specific damage *342 that is likely to result.[7] This is consistent with the Bureau of Indian Affairs’ guideline that states:
[T]he evidence must show the existence of particular conditions in the home that are likely to result in serious emotional or physical damage to the particular child who is the subject of the proceeding. The evidence must show the causal relationship between the conditions that exist and the damage that is likely to result. [Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, D.3(c), 44 Fed Reg 67584, 67593 (November, 26, 1979) (BIA Guideline D.3[c]) (emphasis added).]
This guideline is not binding on this Court, but I find it instructive here. In order to show the existence of particular conditions in the home, and a causal relationship between those conditions and a serious harm that is likely to result, the party seeking termination must present contemporaneous evidence of the current conditions of the parent’s home. Therefore, even if the “active efforts” requirements of 25 USC 1912(d) could be met without the DHS’s presenting a current assessment of respondent’s circumstances and ability to parent and the relevancy of past service efforts to those circumstances, I do not think that the standard in 25 USC 1912(f) requiring a determination beyond a reasonable doubt of the likelihood of serious emotional or physical damage could be met absent such contemporaneous evidence.
Despite holding that the “beyond a reasonable doubt” standard cannot be met with evidence only of a *343 parent’s past conduct, the majority opinion nonetheless concludes that there was sufficient contemporaneous evidence presented in this case to support terminating respondent’s parental rights. The majority bases this conclusion on evidence of respondent’s past conduct and current evidence that “revealed that [respondent] continued to make choices that demonstrated a lack of maturity and ability to care for a child.”[8] Ante at 331-332.1 do not think that contemporaneous evidence demonstrating “a lack of maturity” is sufficient to meet the “beyond a reasonable doubt” standard, particularly when considered in light of the stringent evidentiary requirements suggested by the BIA Guideline D.3(c).[9] *344 The DHS could not have presented evidence of particular conditions in respondent’s home when it did not evaluate respondent’s current home, the risks it would pose to an 8- to 10-year-old child, or respondent and JL’s relationship. The DHS certainly could not have presented evidence showing a causal link between specific conditions in respondent’s home and a likelihood of JL suffering any specific serious emotional or physical damage. Considering the dearth of contemporaneous evidence related to respondent’s and JL’s current circumstances, and the stringent standards of 25 USC 1912(f), I respectfully dissent from the majority’s determination that the “beyond a reasonable doubt” standard of 25 USC 1912(f) was satisfied by the evidence presented in this case.
III. CONCLUSION
I respectfully dissent from the majority’s application of 25 USC 1912(d) and (f) in this case. I would reverse the judgment of the Court of Appeals, vacate the order terminating respondent’s parental rights, and remand this case to the trial court for further proceedings.
Kelly, C.J., concurred with Cavanagh, J.

 There was no dispute that the efforts must, at a minimum, be targeted at the parent who is the subject of the proceeding.

 This would be true even if the parent presents no evidence that the parent’s circumstances or parenting abilities have changed. It is the burden of the party seeking termination to show that past efforts are relevant to the parent’s current situation.

 Regina Frazier, the DHS caseworker, testified that the DHS had not provided to respondent services targeting JL since 2004 and had not *339 provided services regarding any of her children for a year and a half before the termination hearing. Frazier agreed that there had been “no services to [respondent] regarding reunification of her child, no active efforts to reunite this family, particularly with” JL in that period and stated that she did not know how respondent would react to services at this time.
Penny Clark, the Anishinabek Community Family Services caseworker, testified that she had provided services to respondent that were targeted at managing a household with two young children. She testified that she had not provided respondent services since 2005, had never been to respondent’s current home, and would not be able to determine respondent’s current ability to parent.
Jill Thompson, a Binogii Placement Agency caseworker, testified that she had not provided services to respondent or visited respondent’s home for more than two years before the termination hearing.
Thompson and Clark’s supervisor, Melissa VanLuven, testified that the tribe had not provided respondent services since 2005 and had not provided her services specific to JL since 2002.

 Instead, according to the testimony of one caseworker, the agency moved directly to termination proceedings because, as a matter of policy, the DHS does not provide services when the grounds for termination under state law are “automatic.” I agree with the majority’s holding that this policy is inconsistent with the Indian Child Welfare Act. See ante at 327.

 It is conceivable that, if the DHS were to evaluate respondent’s current circumstances and present evidence to the trial court that its past *340 efforts were relevant to respondent’s and JL’s current circumstances, the trial court could validly determine that the requirements of 25 USC 1912(d) were met without the DHS providing any further services. But absent that evaluation and the resulting evidence, regardless of how extensive the agency’s past efforts were, I cannot agree that the DHS has shown that active efforts were made to prevent the breakup of the family and that those efforts were unsuccessful.

 This is consistent with the majority’s statement that “termination based on a presumption of unfitness predicated solely on past conduct would be inconsistent with the ‘beyond a reasonable doubt’ standard ....” Ante at 331 (quotation marks omitted). I also concur with the majority’s holding that the anticipatory-neglect doctrine cannot serve as the sole basis for termination under 25 USC 1912(f). This construction of the statute is consistent with the purposes of the Indian Child Welfare Act outlined in part II of the majority opinion. Ante at 316.

 Similarly, this Court recently expressed skepticism that, under MCL 712A.19b(3)(j), the DHS could present even clear and convincing evidence that there was a “reasonable likelihood” that a child would “be harmed” if returned to a parent’s home when “no one had evaluated [the parent] and his lifestyle.” In re Rood, 483 Mich 73, 117-118; 763 NW2d 587 (2009).

 The majority relies heavily on the “current evidence” of respondent’s 2005 and 2006 convictions for operating a motor vehicle while impaired, her 2005 conviction of aggravated assault for a bar fight, and respondent’s boyfriend’s past conviction of domestic assault. Strikingly, by comparison, in In re Rood, Justice CorRIGAN’s lead opinion found it significant that none of the parent’s past convictions involved violence against children. The parent had testified that he had reformed and was staying out of trouble, and the DHS had not evaluated the parent’s current home situation, so “[ri\o one knew whether [the parent] was likely to persist in criminal behavior because no one had evaluated him and his lifestyle.” In re Rood, 483 Mich at 117-118 (emphasis in original). Similarly, in this case, respondent’s and her significant other’s convictions do not involve violence against children, respondent and her addictions counselor testified that she had made progress since those convictions, and the DHS had not evaluated respondent and her lifestyle since those convictions. Although the factual circumstances of the cases differ, I find this Court’s skepticism that a parent’s past convictions can provide clear and convincing evidence of a reasonable likelihood of harm to the child inconsistent with its finding in this case that similar convictions significantly contribute to establishing beyond a reasonable doubt that serious harm to the child is likely to result.

 BIA Guideline D.3(c) also suggests that even if the types of harm to which JL may have been subjected in respondent’s home two years ago still existed in respondent’s current home, those harms might not be sufficiently “serious” to satisfy 25 USC 1912(f). BIA Guideline D.3(c) states: “Evidence that only shows the existence of community or family poverty, crowded or inadequate housing, alcohol abuse, or non *344 conforming social behavior does not constitute clear and convincing evidence that continued custody is likely to result in serious emotional or physical damage to the child.”
I would urge lower courts to consider BIA Guideline D.3(c) when determining under 25 USC 1912(f) whether “serious” damage to the child is likely to occur.